U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 0 8 2015

TONY R. MOORE, CLERK
BY _____ MB
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| WILLIAM J. BURLEIGH, IV, ET AL. | CIVIL ACTION NO. 1:15-CV-0666 |
| -vs- | JUDGE DRELL |
| KENNETH JAMES, ET AL. | MAGISTRATE JUDGE KIRK |

## RULING

Before the court is the Report and Recommendation of the Magistrate Judge pertaining to Plaintiff's motion to remand (Doc. 9) and a motion to dismiss filed by the United States (Doc. 30). For the reasons stated in the Report and Recommendation of the Magistrate Judge (Doc. 27) previously filed herein, and after an independent, de novo, review of the record including the objections filed, and having determined that the findings and recommendation are correct under the applicable law, Plaintiff's motion to remand (Doc. 9) will be GRANTED. For the same reasons, the motion to dismiss filed by the United States (Doc. 30) will also be GRANTED, all by separate judgment.

I.   **Background & Procedural History**

The instant suit was brought in the Ninth Judicial District Court of Louisiana and subsequently removed by Defendants, Kenneth James, LBM, Inc. (LBM), and Travelers Property Casualty Company of America. (Doc. 1). Plaintiffs filed a motion to remand to state court, which was referred to the Magistrate Judge. (Doc. 9). On August 6, 2015, the Magistrate Judge issued a Report and Recommendation to grant Plaintiff's motion to remand. (Doc. 27). Defendants filed objections to the Report and Recommendation and Plaintiffs replied.

1

We also previously granted Defendant's motion for leave to file a third party complaint against the United States, wherein, Defendants claimed the United States should be substituted as the proper defendant under the Federal Tort Claims Act (FTCA) because Kenneth James was a federal employee within the course and scope of his employment at the time of the accident. (Doc. 25). The United States then filed a motion to dismiss for lack of jurisdiction denying that Mr. James was an employee of the federal government under the FTCA. (Doc. 30). On petition to the United States Attorney, Defendants requested that Mr. James be certified as a federal employee, however, the U.S. Attorney was unable to make that certification. (See Doc. 20)

## II. Report and Recommendation of the Magistrate Judge

In adopting the Report and Recommendation of the Magistrate Judge, we focus on the amount of control exercised by the government over Kenneth James.[1] The parties agree—and the Report and Recommendation notes—that the "critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998). The government must exercise physical supervision over the individual's operations rather than merely prescribing regulations and standards with which the parties must comply. See United States v. Orleans, 425 U.S. 807 (1976); Logue v. United States, 412 U.S. 521 (1973).

In its objections to the Report and Recommendation, Defendants rely upon several provisions in the Performance Work Statement (PWS), which, they argue, show the government

---

[1] We need only focus on the "control" element because we find the discussion in the Report and Recommendation of the Magistrate Judge of the remaining factors set forth by the Fifth Circuit Court in Rodriquez v. Sarabyn, 129 F.3d 760, 765 (5th Cir. 1997) sufficient. (See Doc. 27).

had "detailed physical control" over Kenneth James,[2] such as: complying with the terms of a collective bargaining agreement,[3] licensing, training, identification, dress code, vehicle maintenance, operating hours, and obedience. We disagree. The provisions cited by Defendants set forth the standards and regulations to which the parties to the contract must abide. The question is not whether a government contractor performs its obligations in accordance with standards and regulations in the contract, but whether the government directs the daily operations of the contractor. See Logue, 412 U.S. at 527–28. We find the PWS riddled with evidence that the government did not directly supervise the daily operations of LBM and Kenneth James. Section 1.1 of the PWS states:

> The contractor shall provide all management, supervision, personnel, training, equipment and supplies, except as specified herein as Government furnished, operational and administrative functions, to perform installation vehicular transportation services at Fort Polk, Louisiana. The contractor shall manage and perform vehicle operations, vehicle control, driver testing/licensing, petroleum, oil and lubricant (POL) facilities, wash rack facility and vehicle inspection of commercial taxi cabs for safe, serviceable standards and cleanliness.

It is clear to us that the government placed daily supervisory duties on the contractor (DST) and, thus, the subcontractor (LBM). For example, even though the government mandated that all employees subject to the PWS have "job-appropriate education, training, experience, certification or licensing," the PWS also directed that "[t]he Contractor is responsible for all personnel training, licensing, and certifications," except for any programs that the government may have provided. (Doc. 11-2, p. 102). Further, when coordinating with the government's "Transportation

---

[2] It is important to note that, although LBM, Inc. was not a party to the Performance Work Statement, the Performance Work Statement applies to "prime contractor employees, subcontractor employees, or other persons acting for on behalf of the contractor to perform work on contract." (Doc. 11-2, p. 101). Thus, because Kenneth James was an employee of LBM—the subcontractor of DST—he falls within the scope of the PWS.

[3] Kenneth James was paid directly by LBM.

3

Coordinators/Representative" it was the contractor's responsibility to provide instructions on the "procedures/policies to follow for requesting motor vehicle transportation." (Doc. 11-2, p. 122).

Defendants also submitted the affidavit of David Barbour, the Vice President of Operations for LBM, wherein he states that the government "provides jobs for all DST/LBM personnel," the government "will sometimes provide further instructions/directions directly to LBM personnel," and the government "runs a background check so the LBM employees have base access." We find this affidavit in no way shows how the government supervised the daily operations of the Kenneth James. The fact that the government "provides jobs" for the parties and sometimes "provided further direction/instructions" is the primary objective of the PWS—to provide transportation services—and does not bear on whether the government controlled LBM or Kenneth James. See Brooks v. A.R. & S. Enterprises, Inc., 622 F.2d 8, 11 (1st Cir. 1980). Further, conducting background checks does not constitute control under the FTCA. See id. ("The Navy had a legitimate interest in assuring the safety of the base and the suitability of AR&S personnel for guard duty, but the government's authority under the safety program to screen applicants and to discharge guards who threatened military security did not constitute control within the meaning of the FTCA.").

Also, we find that, without the element of control, the government does not become an employer by supplying vehicles for transportation services provided by one of its contractors. See id. The PWS evidences the lack of control as to property furnished by the government by stating, "[t]he Contractor shall be accountable for the use and condition of all Government Furnished Property." We find no evidence in the record—besides providing the duties to be performed and any applicable standards and regulations—that the government supervised the manner in which Kenneth James provided transportation services. See Battaglia v. United States, 495 Fed. Appx.

4

440, 442 (5th Cir. 2012); Alexander v. United States, 605 F.2d 828, 833–34 (5th Cir. 1979) (providing that the authority to ensure proper compliance with the contract does not constitute control). Accordingly, for the reasons contained herein and for those in the Report and Recommendation of the Magistrate Judge, Plaintiff's motion to remand will be granted.[4]

### III.    Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) Filed by the United States

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may obtain dismissal of a claim for lack of subject-matter jurisdiction. In deciding a 12(b)(1) motion, the court may consider evidence outside of the pleadings and the attachments thereto. Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 237–38 (5th Cir. 2009). More specifically, "under Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008) (quotations omitted). However, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004). When deciding a claim under the FTCA, a court must dismiss a claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) when an individual is not an "employee of the government." See Linkous, 142 F.3d at 275.[5]

---

[4] We are also unpersuaded by Defendant's statutory employer argument. (See Doc. 28, p. 11—13).

[5] Compare Montez v. Dep't of Navy, 392 F.3d 147 (5th Cir. 2004) (stating that a Fed. R. Civ. P. 12(b)(6) or summary judgment standard should be applied where issues of facts are central both to subject matter jurisdiction and the claim on the merits). See also Kerns v. United States, 585 F.3d 187, 196 (4th Cir. 2009) (following the approach the Fifth Circuit Court took in Montez, the Fourth Circuit Court stated, "whether the Government had managed or supervised the activities of the alleged tortfeasor . . . thereby rendering the tortfeasor an independent contractor rather than an employee, was not an issue intertwined with the merits of the FTCA claim then being pursued." Thus, dismissal under Fed. R. Civ. P. 12(b)(1) was proper.).

5

In its motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the United States argues that Kenneth James is not an employee of the federal government for purposes of the FTCA. (See Doc. 30-1, p. 4). The United States essentially cites the same relevant case law and factual support as discussed above and in the Report and Recommendation of the Magistrate Judge. Further, we find no new convincing evidence offered by Defendants in their opposition to the motion to dismiss in support of Kenneth James being an employee of the federal government at the time of the accident. For the reasons stated above and in the Report and Recommendation of the Magistrate Judge, we find that Kenneth James was not an employee of the federal government for FTCA purposes. Accordingly, we do not have subject-matter jurisdiction over this claim. The motion to dismiss filed by the United States will be granted, and all claims contained in Defendant's third party complaint against the United States will be dismissed with prejudice.

SIGNED on this 8th day of December, 2015 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT